# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GWENDOLYN HOUSTON,

    Plaintiff,

v.                                                      Case No. 10-CV-10330

AMERICAN SALES AND MANAGEMENT, LLC,

    Defendant.
                                                   /

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND CONVERTING HEARING TO STATUS CONFERENCE

Before the court is a "Motion for Summary Judgment," filed on October 26, 2010 by Defendant American Sales and Management, LLC ("ASMORG") and opposed by Plaintiff Gwendolyn Houston. After considering the briefs, the court finds a hearing to be unnecessary. E.D. Mich. LR(f)(2). For the reasons stated below, the court will grant Defendant's motion.

## I. INTRODUCTION

On February 19, 2009, Plaintiff was preparing to board an American Airlines flight at Miami International Airport en route to Detroit, Michigan. She requested assistance, and a wheelchair was provided by Defendant ASMORG. According to Plaintiff, the ASMORG employee failed to properly lock the wheels, causing the wheel chair to shift as she was sitting down. As a result, she fell onto the ground and foot extensions of the wheelchair. Plaintiff claims that because of the fall, she sustained injuries to her lower back, left arm, left knee, and right shin, some of which were aggravations of prior

conditions. Plaintiff asserts that the injuries caused by the fall necessitated additional treatment and, ultimately, surgery.

On January 7, 2010, Plaintiff filed this negligence action against American Airlines in Wayne County Circuit Court. American Airlines timely removed the case to this court on the basis of diversity of citizenship. The case proceeded through discovery. Shortly before the close of discovery, the parties stipulated that the correct Defendant was not American Airlines, but the company which provides wheelchair service at Miami International Airport, ASMORG. Accordingly, a stipulated order was entered substituting ASMORG for American Airlines. Shortly thereafter, ASMORG filed a motion for summary judgment.[1] ASMORG asserts that Plaintiff cannot sustain a negligence action because she cannot show that her injuries were caused by the fall, a necessary element of her negligence claim.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*,

---

[1] In reviewing the summary judgment motions, the court realized that it did not have adequate information to determine the citizenship of ASMORG in order to ensure subject matter jurisdiction. *See Curry v. U.S. Bulk Transp.*, 462 F.3d 536, 540 (6th Cir. 2006) (noting that where proper party is substituted later in litigation, under certain circumstances, complete diversity must still exist between the parties). The court thus conducted a telephone conference to inform the parties of its concern and then directed Defendant to file a statement of citizenship. Defendant timely complied, and its statement satisfies the court that subject matter jurisdiction remains proper.

342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'– that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a

verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

As jurisdiction in this case is solely based upon diversity of citizenship, the court must apply the law of the State of Michigan. *Erie R.R. Co. v. Tomkins*, 304 U.S. 64 (1938); *Stalbosky v. Beleu*, 205 F.3d 890 (6th Cir. 2000). Under Michigan law, negligence comprises four elements: 1) duty, 2) breach of duty, 3) causation, and 4) injury. *Bialick v. Megan Mary, Inc.*, 780 N.W.2d 599, 602 (Mich. Ct. App. 2009) (citing *Case v. Consumers Power Co.*, 615 N.W.2d 17 (Mich. 2000)). Defendant argues that Plaintiff's case necessarily fails for lack of causation.

The causation requirement in negligence comprises two distinct parts: causation in fact and proximate causation. *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994) (citing *Moning v. Alfono*, 254 N.W.2d 759, 764 (Mich. 1977)). Causation in fact must be decided as a factual matter, determining whether the negligent action was a *sine qua non* of the injury. *Moning*, 254 N.W.2d at 765; *see also Skinner*, 516 N.W.2d at 479 ("The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred."). As such, it is a question for the jury. Proximate cause analysis requires the determination of whether the results were a "natural and probable result of the negligent conduct." *O'Neal v. St.*

*John Hosp. & Med. Ctr.*, 487 Mich. 485, 496 (Mich. 2010) (citations omitted). Where this question ultimately depends upon facts in dispute, the determination must be given to the jury to find whether the facts are such that proximate cause exists. The issue of whether certain facts establish proximate cause, however, remains a question of law for the court. *Gillam v. Lloyd*, 432 N.W.2d 356, 364 (Mich. Ct. App. 1988) (citing *Moning*, 454 N.W.2d at 766). Thus, proximate causation is a question of law, while actual causation is a question of fact. Here, Defendant appears to base its argument on an alleged lack of causation in fact.[2]

Defendant argues that Plaintiff cannot establish cause in fact because she cannot show that it is more likely than not that her fall is what necessitated her spinal fusion surgery. Defendant contends that Plaintiff relies only on her own "subjective speculation and conjecture" and there is "no objective medical evidence" to establish causation. (Def.'s Mot. Br. 7.) Even Plaintiff's own treating physician, Defendant argues, testified that her surgery was performed because of her age-related symptoms and were not caused by any fall or "acute process." (*Id.* 8.) According to Defendant, "the 'best' [Plaintiff] can state in support of her causation theory is that, following her

---

[2] To the extent that Defendant basis its motion on any alleged failure by Plaintiff to show proximate cause, the court rejects that argument. Proximate cause must be decided by the court, based primarily upon foreseeability. A cause in fact is also a proximate cause only if the risk of harm is a foreseeable result of the action. *Skinner*, 516 N.W.2d at 479; *Moning*, 254 N.W.2d at 765. Foreseeability, however, requires more than a mere possibility, supported by speculation as to any conceivable risk. An act is a proximate cause only if the result is "natural and probable." *O'Neal*, 487 Mich. at 496; *Kaiser v. Allen*, 746 N.W.2d 92, 95 (Mich. 2008) (citing *Shinholster v. Annapolis Hosp.*, 685 N.W.2d 275, 281 (Mich. 2004)). If Plaintiff can prove cause in fact to a jury on these facts, the court finds that the type of harm allegedly incurred by Plaintiff was a foreseeable result of the alleged actions of Defendant. It is a "natural and probable" result for a person, particularly one requesting wheelchair assistance, to suffer back injury or pain after falling straight to the floor while attempting to sit.

2009 fall at the Miami International Airport, she reported to Dr. Claybrooks that her back pain was exacerbated and, following her complaints of the same kind of back pain about which she first complained in 2006, Dr. Claybrooks recommended she undergo back surgery." (*Id.*) While the court agrees that this is, approximately, the "best" Plaintiff can state, the court disagrees that it is an insufficient platform on which to proceed to the jury.

In *Skinner*, the Michigan Supreme Court explained the degree of proof required for cause in fact. 516 N.W.2d 475.[3] The court stated that causation may be proved by circumstantial evidence:

> To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. In *Kaminski v. Grand Trunk W.R. Co.*, 347 Mich. 417, 422, 79 N.W.2d 899 (1956), this Court highlighted the basic legal distinction between a reasonable inference and impermissible conjecture with regard to causal proof:
>
>> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.
>
> We want to make clear what it means to provide circumstantial evidence that permits a reasonable inference of causation. As *Kaminski* explains, at a minimum, a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just

---

[3] *Skinner* was a products liability case but such cases nonetheless require proof as causation, both actual cause and proximate. *Skinner*, 516 N.W.2d at 478-80.

6

> as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.

*Id.* at 480 (footnote omitted). The Michigan Supreme Court then proceeded to cite various negligence cases enforcing this rule:

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. [*Mulholland* at 416, n.18, 443 N.W.2d 340, quoting Prosser & Keeton, Torts (5th ed.), § 41, p 269.]
>
> The mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two. [*Jordan v. Whiting Corp.*, 396 Mich. 145, 151, 240 N.W.2d 468 (1976).]
>
> There must be substantial evidence which forms a reasonable basis for the inference of negligence. There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess. . . . [*Daigneau v. Young*, 349 Mich. 632, 636, 85 N.W.2d 88 (1957) (citations omitted).]
>
> Something more should be offered the jury than a situation which, by ingenious interpretation, suggests the mere possibility of defendant's negligence being the cause of the injury. [*Howe,* 236 Mich. at 584, 211 N.W. 111.]

*Skinner*, 516 N.W.2d at 481. Defendant suggests that Plaintiff's theory rests on mere speculation, without the degree of evidence necessary to prove causation in fact. According to Defendant, Plaintiff cannot show through medical evidence that her surgery would not have occurred but for her fall. Plaintiff's treating physician testified that her back condition resulted from a degenerative condition and Defendant argues

7

that Plaintiff cannot rely on her own subjective complaints of pain. Defendant's argument rests largely on three unpublished Michigan cases.[4]

In *Carpenter v. Knight*, No. 257581, 2006 WL 707480 (Mich. Ct. App. Mar. 21, 2006), the plaintiff had preexisting back injuries but then was involved in a motor vehicle accident. *Id.* at *1. The court held that the plaintiff "failed to present evidence that he suffered a medically identifiable injury or aggravation of a preexisting injury, which was caused by the accident in question." *Id.* In that case, the only evidence that the plaintiff presented were his own statements that the injury aggravated his condition. *Id.* at *2. The plaintiff also attempted to contrast a pre-accident medical report stating he could go back to work in two months with a post-accident medical report stating he could not go back to work indefinitely. *Id.* The court held that the plaintiff could not rely solely on the fallacy of *post hoc, ergo propter hoc* logic in order to prove his case. *Id.*

In *McLaren v. Emasco Insurance Company*, No. 277582, 2009 WL 692083 (Mich. Ct. App. Mar. 17, 2009), the plaintiff similarly had a history of back problems which the plaintiff claimed were aggravated in an automobile accident. *Id.* at *1. The court held that the plaintiff did not present sufficient proof of causation to proceed to a jury. The plaintiff presented his own assertions that his symptoms post-accident were different and more severe than his pre-accident symptoms, but the court held that the

---

[4] The cases upon which both parties rely primarily involved motor vehicle negligence, which is a slightly different cause of action than a traditional negligence claim. For negligence in operation of a motor vehicle, a plaintiff must prove that he suffered an "objectively manifested impairment." Mich. Comp. Laws 500.3135. Although the portions of the cases to which Defendant cites invoke traditional causation language, it is possible that the plaintiffs in those cases were held to a slightly different standard in light of their burden to prove "objectively manifested" injuries. The court's analysis above does not turn on this observation, however, because the facts of this case are distinguishable from those in the cases on which Defendant relies.

8

fact that "plaintiff's symptoms became worse after the accident does not establish, in and of itself, that the accident caused the worsened symptoms." *Id.* at *2. The court found notable that there was no "medical documentation or expert testimony indicating that the accident triggered an exacerbation of plaintiff's symptoms." *Id.*

Defendant also cites *Lindahl v. Rubright*, No. 245568, 2004 WL 1620847 (July 20, 2004), another case in which the plaintiff suffered back pain for many years before, this time, a motorcycle accident. In *Lindahl*, the plaintiff's own treating physician testified that plaintiff's injuries were not related to the accident. *Id.* at *1. The plaintiff acknowledged this fact but argued that the doctor's testimony was "contradictory and equivocal," and further relied on his own testimony. *Id.* at *2. The court found that the plaintiff could not meet his burden on causation. *Id.* The court based this conclusion on the following evidence:

> In the present case, plaintiff's treating physician, Dr. Born, opined that there was no correlation between the injury and the accident. Plaintiff did not present documentary evidence by a physician to contradict the assertions of Dr. Born, and the record does not substantiate the attack to Dr. Born's qualifications and conclusions. For example, plaintiff contends that the documentary evidence reveals that plaintiff reported low back pain when he arrived at the hospital within hours of the accident. However, review of that record reveals that plaintiff positively reported that he was wearing a helmet. However, the hospital record contains a symbol to indicate that plaintiff did not report loss of consciousness, neck, or back pain.

*Id.* (footnotes omitted).

Defendant contends these cases illustrate that Plaintiff must produce some sort of medical evidence linking her injuries to the fall. In response, Plaintiff argues both that medical evidence is not required and that, in any event, she has provided such evidence. Specifically, Plaintiff argues that her doctor testified that it is possible that

9

the fall aggravated her symptoms and that this, coupled with her own testimony, is enough to survive summary judgment.

Plaintiff cites to an unpublished case allowing a jury trial where a plaintiff claims that an accident exacerbates a pre-existing condition and supports that claim with her own subjective testimony of increased pain. *Spiers v. Morrison*, No. 189692, 1997 WL 33344901, *7 (Mich. Ct. App. Sept. 5, 1997). In so holding, the court specifically found sufficient that the plaintiff's doctor's opinion that the accident "could" cause such an aggravation. *Id.* ("[T]hat Dr. Wright failed to testify that the second collision 'did' aggravate plaintiff's neck and shoulder problems, but rather testified only that the second collision 'could' aggravate these problems, we believe, goes only to the weight to be accorded the doctor's testimony."). Plaintiff also cites *Sayles v. Ejupi*, No. 264390, 2006 WL 250939 (Mich. Ct. App. Feb. 2, 2006), in which a plaintiff testified that a particular accident elevated her pain levels. The court reversed a grant of summary disposition based, in part, by testimony of a doctor that it was "very possible that pain was exacerbated by the 2001 accident, and degenerative joint disease could have been aggravated by trauma." *Id.* at *2.

The court finds that the facts stated in Plaintiff's authority, rather than Defendant's, is more analogous to those in this case, and that the reasoning expressed therein is also more persuasive. Here, Plaintiff testified that her pain after the fall was much worse than before the fall. (Pl.'s Dep. at 168-69, 174-75, Pl.'s Ex. 1.) Four days after her fall she indeed visited an urgent care center, where she complained of pain from the fall. (*Id.* at 40, Pl.'s Ex. 1; Pl.'s Ex. 5.) The urgent care notes indicate "[m]echanism of injury includes fall from height . . . while trying to sit in wheel chair,

chair rolled from behind. The complaint is severe." (*Id.*) She then scheduled an appointment to visit Dr. Roderick Claybrooks, whom she had not seen since May of 2006. (Pl.'s Dep. at 40, Pl.'s Ex. 1; Pl.'s Ex. 3.)

Dr. Claybrooks testified that the "condition" which prompted his decision to recommend surgery was what he believed to be age-related spondylolisthesis. (Claybrooks Dep. at 28, Pl.'s Ex. 8.) But he also testified that spondylolisthesis is not always an indication for surgery and that the objective imaging findings in Plaintiff's case alone would not have warranted surgery without her subjective complaints of pain. (*Id.* at 28-29.) He thus testified that a "great deal" of his decision to recommend surgery was based on her subjective complaints of pain, and he would not have recommended surgery without those complaints of pain. (*Id.* at 29, 43-44.) Dr. Claybrooks was also asked "And her symptoms and in your record do you agree that they were exacerbated by a fall?", and he responded, "Well, yeah, in her words that's exactly what she said, that the fall from the wheelchair exacerbated her back pain." (*Id.* at 36.) Dr. Claybrooks testified that in his opinion the fall did not contribute or exacerbate the genetic process of her degeneration, but that "it could have exacerbated symptoms and in [Plaintiff's] words, it did exacerbate the symptoms." (*Id.*) He also stated, generally, that falls such as that experienced by Plaintiff could exacerbate her symptoms. (*Id.* at 36-37.) Dr. Claybrooks testified that the imaging of Plaintiff's back did not change, and apparently would not change, but that her symptoms could fluctuate. (*Id.* at 42.) He explained that an exacerbation is an increase from a patient's baseline, that is, anything that increases her symptoms beyond that which she can tolerate. (*Id.* at 42.) Dr. Claybrooks agreed that "before the fall we had a baseline and after the fall it exacerbated that baseline."

(*Id.* at 42-43.)

Viewing these facts in a light most favorable to Plaintiff, a reasonable jury could find that her surgery more likely than not would not have occurred but for the February 2009 fall. Under Michigan law, the plaintiff bears the burden of proof of causation, but "the plaintiff is not required to produce evidence that positively eliminates every other potential cause. Rather, the plaintiff's evidence is sufficient if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Skinner*, 516 N.W.2d at 478 (citing *Mulholland v. DEC Int'l*, 443 N.W.2d 340 (Mich, 1989)). Here, Plaintiff has identified a plausible theory that her degenerative condition was exacerbated by the fall, thus causing her surgery. Plaintiff testified that the fall greatly increased her pain levels, prompting her to seek medical attention. Dr. Claybrooks testified that, although the surgery was performed because of her degenerative condition, he recommended the surgery because of her complaints of pain. Under these facts, a reasonable jury could find causation in fact.

Michigan law follows the well-known "principle that a peculiar susceptibility of the victim does not relieve the tortfeasor of full responsibility for the damages." *Wilkinson v. Lee*, 617 N.W.2d 305, 308 (Mich. 2000). That is, "[a] tortfeasor takes a victim as the tortfeasor finds the victim and will be held responsible for the full extent of the injury, even though a latent susceptibility of the victim renders the injury far more serious than reasonably could have been anticipated." *Id.* In *Wilkinson*, the plaintiff suffered from a brain tumor, but did not require brain surgery until after a motor vehicle accident. The evidence supporting a causation theory was summarized by the Michigan court as

follows:

> Wilkinson and his family testified that he did not experience the afore-described symptoms before the 1992 accident at issue, and that the symptoms started immediately after the accident. Each of these witnesses testified that Wilkinson's symptoms increased in severity over time, commencing after the accident occurred. Moreover, Dr. Guthikonda testified that the trauma of the accident could have precipitated and/or complicated the symptoms Wilkinson experienced. Specifically, Dr. Guthikonda testified that although the accident did not cause the tumor to grow, the trauma of the accident "precipitated" Wilkinson's symptoms because the force of the accident pushed the tumor against plaintiff's brain, causing small microchanges, hemorrhages or friction against the brain. Dr. Guthikonda testified that this conclusion becomes more likely because the symptoms started immediately after the accident. In addition, Dr. Boodin admitted that he was speculating when he opined that Wilkinson's symptoms would have begun and intensified even had the accident not occurred.

*Id.* (emphasis removed). Although the Michigan Court of Appeals held that the plaintiff could not show that the accident caused the tumor, the Michigan Supreme Court reversed, stating:

> The majority erred in focusing on the underlying brain tumor as the 'basic injury' involved in the case. *Regardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered symptoms from that condition.* The medical testimony at trial would clearly have permitted the jury to conclude that the trauma caused by the accident precipitated the symptoms.

*Id.* (emphasis added).

Likewise, in this case, a reasonable jury could find that Plaintiff's fall triggered symptoms from her degenerative condition. This is not to say that a reasonable jury could not also reject this theory. It is not for this court to weigh the relative merits of the parties' cases. The court finds only that there is sufficient evidence on which a reasonable jury *could* return a verdict for Plaintiff. Indeed, just last week, the Sixth Circuit reiterated the importance of allowing factual questions to be decided by a jury,

13

even where the likely result is obvious.[5]  In *Harris v. J.B. Robinson Jewelers*, ___ F.3d. ___ (6th Cir. Dec. 8, 2010),  the majority reversed the district court's grant of summary judgment, finding that the plaintiff's admittedly self-serving, and highly incredible, affidavit was sufficient to create an issue of fact even in the face of overwhelming expert testimony to the contrary.  *Id.*  Even if Defendant has identified certain aspects of Plaintiff's case which are weak, because Plaintiff has identified sufficient evidence to create a genuine issue, the case must proceed to the jury.  Accordingly, Defendant's motion must be denied.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 22] is DENIED.

IT IS FURTHER ORDERED that the December 15, 2010, hearing is CONVERTED to a status conference.

 S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  December 14, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 14, 2010, by electronic and/or ordinary mail.

 S/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\10-10330.HOUSTON.SJ.Negliglence.chd.2.wpd

---

[5]  "The availability of summary judgment in diversity actions is governed by the federal standard, embodied in Fed. R. Civ .P. 56, rather than by state law."  *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165-66 (6th Cir. 1993) and 10 A Charles Alan Wright Et Al., Federal Practice & Procedure § 2712, at 219 (3d ed. 1998).